UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Frank King, Jr.,

    Plaintiff,

v.	Civil Action No. 2:12-CV-277

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 5, 9)

Plaintiff Frank King, Jr. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are King's motion to reverse the Commissioner's decision (Doc. 5), and the Commissioner's motion to affirm the same (Doc. 9). For the reasons stated below, the Court GRANTS King's motion, in part; DENIES the Commissioner's motion; and REMANDS for further proceedings and a new decision.

## Background

King was fifty-three years old on his alleged disability onset date of November 8, 2001. He completed school through the eleventh grade and thereafter received a GED. He has worked as a truck driver, a highway maintenance worker, and a highway maintenance supervisor. (AR 152, 167.) His most significant work was as a

bridge mechanic for the State, starting in approximately 1969 and continuing in various related state jobs for nearly thirty years. (AR 29, 422.) This work was labor-intensive, requiring King to be on his feet all day, exerting his upper extremities for much of the time. (AR 422.)

King's shoulders and knees began to hurt in the late 1980s, and he completed a course of physical therapy to address these problems in 1996. (AR 423.) Later that year, he accepted early retirement, hoping to find a less physically-demanding job that he could do on a full- or part-time basis. (AR 33.) Unfortunately, his pain worsened after his 1996 retirement. (*Id.*) In approximately 2010, he attempted a part-time job driving a van for special education students, but quit after six weeks because he found it too difficult to get in and out of the van and walk to meet the children. (AR 30.)

King lives at home with his wife, and has three adult sons and four grandchildren. (AR 27, 394.) His hobbies include hunting, fishing, and walking in the woods, but he has been limited in his ability to do these activities mostly due to his shoulder and knee problems. He is "mildly obese" (AR 425), and his doctors have encouraged him to lose weight over the years (AR 212-13, 216, 285, 349, 389).

In December 2009, King filed an application for disability insurance benefits (AR 119-25), alleging disability beginning July 31, 1996 due to arthritis in his shoulders and "bad knees" (AR 165). He also alleged that obesity and a visual impairment in his left eye contributed to his inability to work. (AR 208.) In a Disability Report, King stated that his shoulder pain prevented him from doing things around the house, sleeping, and reaching. (AR 198.) In addition, he stated that he had back and foot pain. (*Id.*) In a later

Disability Report, King stated that he had chronic pain, and that the arthritis in his knees and hands had progressively worsened. (AR 201.)

King's disability application was denied initially and upon reconsideration, and he timely requested an administrative hearing. Administrative Law Judge ("ALJ") Paul Martin conducted the hearing on June 8, 2011. (AR 21-58.) King appeared and testified, and was represented by counsel. Just before the hearing, King amended his alleged disability onset date from July 31, 1996 to November 8, 2001, making the alleged disability period from November 8, 2001 through December 31, 2001, the date last insured. (AR 24, 207.) On June 24, 2011, the ALJ issued a decision finding that King was not disabled under the Social Security Act during the alleged disability period. (AR 9-16.) Thereafter, the Appeals Council denied King's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted his administrative remedies, King filed the Complaint in this action on December 12, 2012. (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to

whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Martin first determined that King had not engaged in substantial gainful activity during the period from his alleged disability onset date through his date last insured. (AR 11.) At step two, the ALJ found that King had

4

the following severe impairments: "amblyopia[1] of the left eye, degenerative arthritis of the knees and ankles, a shoulder condition[,] and obesity." (AR 11.) Conversely, the ALJ found that King's lateral epicondylitis[2] of the right elbow was nonsevere, as it caused "no significant limitation in the upper extremity lasting for a continuous 12-month period." (AR 12.) At step three, the ALJ determined that none of King's impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*)

Next, the ALJ determined that King had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [King] can lift and carry no more than 20 pounds occasionally and 10 pounds frequently and he can stand and walk for 4 hours in an 8[-]hour day and sit for about 6 hours in an 8[-]hour day. Further, [King] can occasionally push and pull, can occasionally climb ramps or stairs, but not ladders, ropes and scaffolds, he can occasionally crouch and kneel and frequently stoop, but cannot crawl and he experiences reduction in visual acuity.

(AR 12.) Given this RFC, the ALJ found that King was unable to perform his past relevant work as a tractor-trailer truck driver, highway maintenance supervisor, or highway maintenance worker, which occupations the ALJ found to involve "heavy[-] and medium[-]exertion work." (AR 14.) Nonetheless, the ALJ determined that there were other jobs existing in significant numbers in the national economy that King could do,

---

[1] "Amblyopia" is "[p]oor vision caused by abnormal development of visual areas of the brain in response to abnormal visual stimulation during early development." Stedman's Medical Dictionary 58 (28th ed. 2006).

[2] "Epicondylitis," otherwise known as "tennis elbow," is "an inflammation of the humerus (upper arm bone) at the lateral epicondyle—on the outside portion of the elbow." 8 Attorneys Medical Advisor § 72:10 (Mar. 2013), *available at* Westlaw MEDADV. Pain usually develops gradually, and "[t]here is minimal local swelling and full range of motion at the elbow[, but] [s]ymptoms may progress to the point where picking up a coffee cup or turning a door knob are difficult." *Id.* (citation omitted).

including parking lot attendant, escort, and fundraiser. (AR 15.) The ALJ concluded that King had not been under a disability from the alleged disability onset date through the date last insured. (AR 16.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the

determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

King "does not dispute the Commissioner's medical findings in this claim." (Doc. 5 at 1.) The only disputed issue is whether the ALJ erred at step five of the sequential analysis in relying on the testimony of the vocational expert ("VE") that King was able to perform the job of fundraiser. (*Id.*; *see also* Doc. 9-1 at 4-5, Doc. 10 at 1.) King argues that the ALJ should not have relied on the VE's testimony because it clearly conflicts with the Dictionary of Occupational Titles ("DOT") and the ALJ failed to resolve that conflict as required by Social Security Ruling ("SSR") 00-4p and Second Circuit case law. (Doc. 5 at 1.) Further, King contends that the VE's testimony is insufficient to meet the Commissioner's burden at step five of the ALJ's sequential analysis to demonstrate that there were jobs existing in significant numbers in the national economy that King could do. (*Id.* at 10.) The Commissioner disagrees, asserting that the ALJ's determination that King retained the RFC to perform the job of fundraiser, which job exists in significant numbers in the national economy, is legally correct and supported by substantial evidence. (Doc. 9-1 at 4-5.)

Where, as here, the claimant has been successful at step four of the sequential analysis in showing that he is unable to perform his past relevant work, the Commissioner has the burden at step five to prove that "the claimant still retains a [RFC] to perform alternative substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). In the ordinary case, the Commissioner satisfies this burden by resorting to the applicable medical vocational guidelines ("the Grids"), 20 C.F.R. pt. 404, subpt. P, app. 2 (1986). *Id.* But where the claimant suffers from an additional nonexertional impairment which has "any more than a 'negligible' impact on [his] ability to perform the full range of work," the ALJ cannot rely on the Grids and instead must obtain the testimony of a VE. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). Stated differently, "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the [Commissioner] must introduce the testimony of a [VE] (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603; *see Roma v. Astrue*, 468 F. App'x 16, 21 (2d Cir. 2012); SSR 83-12, 1983 WL 31253, at *2 (1983) (when a claimant's RFC does not coincide with the exertional criteria of any one of the external ranges, i.e., sedentary, light, or medium, and when it is unclear how extensively claimant's limitations erode the occupational base, the ALJ must consult a VE). A claimant's work capacity is "significantly diminished" if there is an "additional loss of

work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp*, 802 F.2d at 606; *see Roma*, 468 F. App'x at 21; *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

Here, the ALJ found that King's "ability to perform all or substantially all of the requirements of [light] work was impeded by additional nonexertional limitations." (AR 15.) Thus, the ALJ was required to—and did—consult with a VE. (AR 15-16.) The ALJ stated in his decision that, in order to determine "the extent to which [King's additional nonexertional] limitations erode the unskilled light occupational base," he "asked the [VE] whether jobs existed in the national economy for an individual with [King's] age, education, work experience, and [RFC]." (AR 15.) In response, the VE testified at the administrative hearing that this hypothetical individual could do three jobs, including the job of telephone fundraiser, at issue herein. (AR 47-50.) The VE further testified that this job was described in the DOT as an unskilled, "light exertion" occupation, and that 300-400 of these positions existed in Vermont and 500,000 existed nationally. (AR 48 (citing DOT 293.357-014).) This testimony by the VE regarding the DOT's definition of the fundraiser job was accurate: according to the DOT, the "Fund Raiser II" job is a "Light Work" job with "[p]hysical demand requirements . . . in excess of those for Sedentary Work." U.S. Dep't of Labor, Dictionary of Occupational Titles, DICOT 293.357-014, 1991 WL 672578 (4th ed. 1991). On cross examination, however, the VE testified that the fundraiser job "reads more like a sedentary job," given that it

does not involve significant lifting or standing.  (AR 54-55.)[3]  Thus, there was a clear conflict between the DOT definition of the fundraiser job and the VE's testimony about the requirements of that job.

Social Security Ruling ("SSR") 00-4p requires that, where the VE provides evidence about the requirements of a job which appears to conflict with information provided in the DOT, the ALJ has an "affirmative responsibility" to ask about the possible conflict.  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  Specifically, SSR 00-4p directs the ALJ to "obtain a reasonable explanation for the apparent conflict." *Id.*  In other words, SSR 00-4p requires that where there is a conflict between the VE evidence and the DOT, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id.* at *2.  The Ruling states:

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled.  *The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.*

*Id.* at *4 (emphasis added).  Here, as the Commissioner concedes (*see* Doc. 9-1 at 5), the ALJ failed to identify the obvious conflict between the VE's testimony that the fundraiser job was "more like a sedentary job" (AR 55) and the DOT's description of that job as a "Light Work" job demanding more physically than a sedentary job (DICOT 293.357-

---

[3] More specifically, the VE testified that the fundraiser job "basically [involves] telephonic work" (AR 48), including "contacting individual[s] to solicit donations . . . [f]or one charity or another" (AR 53), and that the days of fundraisers "go[ing] door to door" are "past in the real world" (AR 55).  The ALJ further testified that the fundraiser job involves "constant use of the arms," and "frequent reaching, handling, and fingering," but "no use of . . . foot pedals" and "negligible weightlifting."  (AR 53-55.)

10

014).  In fact, the ALJ inaccurately stated that "the [VE]'s testimony is consistent with the information contained in the [DOT]."  (AR 15.)  The ALJ therefore erroneously failed to explain in his decision how he resolved the conflict between the VE testimony and the DOT, and failed to determine if the VE's explanation for his description of the job was reasonable and provided a basis for relying on that testimony rather than on the DOT.  *See Diaz v. Astrue*, Civil Action No. 3:11-cv-317 (VLB), 2012 WL 3854958, at *4 (D. Conn. Sept. 5, 2012) (collecting cases, and noting that "[r]eviewing courts have applied SSR 00-4p and held that the Commissioner did not produce substantial evidence that there are jobs in the national economy when the ALJ fails to inquire about an 'apparent unresolved conflict' between the VE's testimony and the DOT").

   Despite the Commissioner's argument to the contrary, it cannot be said that the ALJ's error regarding the fundraiser position was harmless, given that, as the Commissioner concedes, the VE's testimony regarding the only other two jobs which the ALJ found King could do—parking lot attendant and escort—"is insufficient to support a finding that a significant number of these jobs [existed] which King could perform."  (Doc. 9-1 at 4.)  Moreover, as discussed above, because the ALJ determined that King could not perform the full range of light work, the Commissioner could not rely on the

Grids conclusively to sustain her burden at step five.[4]  Instead, the Commissioner had to rely on VE testimony or other similar evidence to establish the existence of significant work that King could perform.  Although the ALJ did elicit testimony from a VE, that testimony—and the ALJ's analysis of it—was deficient for the reasons stated.  In *Diaz*, 2012 WL 3854958, at *4-5, after providing a detailed review of the relevant case law, the court discussed when an ALJ's error is harmless, and when it is not, where the ALJ failed to inquire about or resolve an apparent unresolved conflict between VE testimony and the DOT.  The court stated:

> Courts have affirmed the decisions of the ALJ and held that an unresolved inconsistency is harmless error where the apparent inconsistency is obviated by DOT task functions and descriptions for VE recommended jobs that are synonymous to the ALJ's RFC determination.  Therefore, where the determination of the ALJ is clear from the record and any inconsistencies are explained, courts have found claimed error to be harmless.  Otherwise, remand for further administrative action is necessary.

*Id.* at *5 (citations omitted).  Here, as discussed above, the ALJ did not acknowledge or explain in his decision the inconsistency between the VE's testimony and the DOT.  The ALJ's thoughts on this matter are entirely unclear.  But "SSR 00-4p requires the ALJ to afford no room for conjecture where there is an apparent conflict between the VE's testimony and the DOT."  *Id.* at *6.  Moreover, "a resolution [of this issue] by th[e c]ourt

---

[4] Even if the Grids applied, they would not be dispositve, as King falls between two different rules.  If a "sedentary" work capacity was assigned, the Grids would direct a finding of "disabled."  Specifically, Grid Rule 201.14, which applies where the claimant's RFC allows for the performance of only sedentary work, states that where, as here, the claimant is a person "[c]losely approaching advanced age" (ages 50-54) (King was 53 on the alleged disability onset date), with a high school education and previous work skills that are "not transferable," the claimant is disabled.  20 CFR pt. 404, subpt. P, app. 2, r. 201.14.  If, on the other hand, a "light" work capacity was assigned, the Grids would direct a finding of "not disabled."  *Id.* at r. 202.14.  But, as discussed above, because the ALJ's RFC determination places King between the sedentary and light exertional levels, the Grids may be used only as a framework for the ALJ's decision.  SSR 83-12, 1983 WL 31253, at *2 (1983).

12

would be unduly conjectural in the absence of clarification from the ALJ." *Id.*

The Court acknowledges that the VE did testify there was a sedentary job (fundraiser) that King could do; and that 20 C.F.R. § 404.1567(b) provides that, generally, if a claimant can do light work, which the ALJ found King could do, with limitations, he can also do sedentary work. *See Johnson v. Barnhart*, No. 05-C-129-C, 2005 WL 3271953, at *14 (W.D. Wis. Nov. 29, 2005) ("It is a non sequitur to argue that because plaintiff suffered conditions that limited her job base essentially to sedentary jobs, the ALJ erred in concluding that plaintiff was able to perform a limited range of light work."); *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36-37 (6th Cir. 2010) (holding that even if the VE testified that the only jobs claimant could do were sedentary, such testimony did not render erroneous the ALJ's determination that claimant could perform a limited range of light work). But the applicable regulation also states that this rule applies only where there are "no additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Here, the ALJ determined that King could not do the full range of light work (AR 12, 15), i.e., there were "additional limiting factors." And it appears that at least one of these "additional limiting factors" may have precluded King from performing the fundraiser job as it was described by the VE at the administrative hearing.

The VE testified that the fundraiser job requires "constant use of the arms" (AR 53), and that a fundraiser is "always using [his] hands" (AR 54). In an October 2010 Independent Medical Examination report, consulting examiner Dr. Philip Davignon opined that one of King's work restrictions was avoidance of "repetitive gripping,

13

grasping, pushing or pulling." (AR 426.) In a Medical Update form completed in January 2011, Dr. Davignon stated that this and the other work restrictions identified in his October 2010 report were present prior to December 31, 2001, the alleged disability onset date. (AR 434.) Plausibly, an individual who could not do "repetitive gripping [and] grasping" (AR 426) would be precluded from performing a job involving "constant use" (AR 53) of his arms and hands. Although Dr. Davignon was not a treating physician, and although the ALJ does not discuss his opinion in the decision, the ALJ appears to have valued Dr. Davignon's opinion, given that many of the limitations stated therein are reflected in the ALJ's RFC determination (*compare* AR 12 *with* AR 426), and the ALJ does not cite to other medical evidence or opinions in support of that determination. The ALJ should have recognized and explored this apparent incongruity between Dr. Davignon's opinion regarding King's limitations and the VE's testimony regarding the fundraiser job, rather than adopting without explanation the VE's testimony that King was able to perform the fundraiser job. *See Smith v. Comm'r of Soc. Sec.*, No. 2:10-cv-176, 2011 WL 6372792, at *11 (D. Vt. Dec. 20, 2011) ("'[VE] [t]estimony elicited by hypothetical questions that do not relate *with precision* all of a claimant's impairments cannot constitute substantial evidence to support an [ALJ's] decision to deny benefits.'") (quoting *Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir. 1994)). Instead, the ALJ failed to even discuss Dr. Davignon's opinion in his decision. Moreover, although, as noted above, the ALJ's RFC determination is largely consistent with that opinion, inexplicably, the RFC determination omits Dr. Davignon's gripping and grasping limitations.

For these reasons, the Commissioner has failed to meet her burden at step five, and the matter should be remanded for further proceedings and a new decision.

Finally, although not addressed by either party, it bears noting that, in addition to the above-described step-five errors, the ALJ made two significant factual errors in his decision. First, the ALJ repeatedly stated that King's alleged disability onset date was July 31, 1996. (AR 9, 11, 16.) But the alleged disability onset date was explicitly amended to November 8, 2001 in a June 1, 2011 letter from King's attorney. (AR 207, 211.) The ALJ and King's attorney discussed this amendment at the June 8, 2011 administrative hearing (AR 24), yet it appears the ALJ may have considered King's application under the original alleged onset date. Second, the ALJ erroneously stated in the RFC portion of his decision that "[t]he medical record does not contain any treatment notes or specific discussion of limitations during 2001." (AR 14.) In fact, there are multiple treatment notes from the year 2001 (AR 284-85, 293, 296), and at least one indicates that King was limited in his activities due to knee pain (AR 285). The ALJ was aware of these records, as he cited to them (generally) in an earlier portion of his decision. (AR 12.) Nonetheless, this statement, as well as the ALJ's repeated misstatement of King's alleged disability onset date, should be corrected on remand. Given these misstatements of fact, it is unclear whether the ALJ's RFC determination and hypothetical questions posed to the VE at the administrative hearing accurately describe all of King's limitations. Thus, the ALJ should also reconsider these issues on remand.

## Conclusion

For these reasons, the Court GRANTS King's motion (Doc. 5), in part; DENIES the Commissioner's motion (Doc. 9); and REMANDS the matter for further proceedings and a new decision in accordance with this ruling.

King requests that, instead of remanding this case for further proceedings, the Court should reverse and remand solely for a calculation of benefits. In cases where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," reversal for a calculation of benefits may be appropriate. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Where, however, there are gaps in the administrative record or the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision. *Id.* at 82-83; *see also Pratts*, 94 F.3d at 39. Here, after applying the proper legal standard and correcting the ALJ's factual errors, an ALJ may still find that there are jobs existing in significant numbers in the national economy that King could perform. In that event, an award of benefits would not be warranted. Thus, King's request that the matter be reversed and remanded solely for a calculation of benefits is DENIED.

On remand, as stated above, the ALJ should correct the misstatements of fact discussed herein, and revise any portions of his decision affected thereby. Moreover, the ALJ should require the Commissioner to present either further testimony from a VE or other similar evidence regarding the existence of jobs in the national economy for an individual with King's limitations. If VE testimony is elicited, the ALJ should ask the VE if the evidence he or she has provided conflicts with information provided in the

DOT; and if the VE's evidence appears to conflict with the DOT, the ALJ should obtain a reasonable explanation for the apparent conflict and state that explanation in his or her decision.

Dated at Burlington, in the District of Vermont, this 31st day of July, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge